Matthew J. Antonelli (Bar No. 343144)
mantonelli@ruggerilaw.com
RUGGERI PARKS WEINBERG LLP
315 Montgomery Street, Suite 900
San Francisco, CA 94104
Tel:   (415) 429-0998
Fax:   (202) 984-1401

*Counsel for Plaintiff Great American*
*Insurance Company*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>PETERSON-CHASE GENERAL ENGINEERING CONSTRUCTION, INC.; STARR INDEMNITY & LIABILITY COMPANY; and HOMESITE INSURANCE COMPANY<br><br>Defendants. | Case No.: 8:26-cv-01118<br><br>**COMPLAINT** |

Plaintiff Great American Insurance Company ("Great American") brings this Complaint on its own behalf and, in the alternative, as subrogee of Peterson-Chase General Engineering Construction, Inc., seeking restitution, reimbursement, and damages arising from an insurance policy issued by Great American and costs paid to settle an underlying lawsuit.

## PARTIES AND JURISDICTION

1.      Plaintiff Great American Insurance Company is an Ohio company with its principal place of business in Ohio.

2.      Defendant Peterson-Chase General Engineering Construction, Inc.

1

COMPLAINT

("Peterson-Chase") is a California corporation with its principal place of business in California.

3.　Defendant Starr Indemnity & Liability Company ("Starr") is a Texas corporation with its principal place of business in New York.

4.　Defendant Homesite Insurance Company ("Homesite") is a corporation organized under the laws of the State of Wisconsin with its principal place of business in Massachusetts.

5.　This Court has jurisdiction over this matter because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.　28 U.S.C. § 1332(a)(1).

6.　Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Peterson-Chase's principal place of business is within this judicial district and a substantial part of the events giving rise to this dispute occurred here.

## FACTUAL BACKGROUND

### A.　The Policies

7.　Starr, Homesite, and Great American all issued liability insurance coverage to Peterson-Chase, or pursuant to which Peterson-Chase was an insured, for a policy period of January 1, 2022 to January 1, 2023.

8.　Starr issued a primary auto liability policy, number 1000008466221, with a combined single limit of $2,000,000 per accident.

9.　Homesite issued policy number CXP-001450-00, with limits of $5,000,000 per occurrence in excess of Starr's limits.

10.　Great American issued second layer excess insurance to Peterson-Chase.　Great American issued policy number TUE-3404223-06, with limits of $10,000,000 per occurrence in excess of Starr's limits of $2,000,000 and Homesite's limits of $5,000,000 (the "Great American Policy").

2

COMPLAINT

11. The insuring agreement of the Great American Policy provides that Great American "will pay on behalf of the Insured 'loss' in excess of the Underlying Limits of Insurance[.]" "Loss" means "those sums which you are legally obligated to pay as damages, after making proper deductions for all recoveries and salvage."

12. As a second layer excess policy, the Great American Policy does not contain a duty to defend Peterson-Chase in lawsuits that could potentially give rise to liability under the policy. *See* Great American Policy at III. Defense ("We will not be required to assume charge of the investigation or any claim or defense of any suit against you.").

13. Instead, Great American has the "right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for 'loss' under this policy." Great American further has the right to investigate and settle any claim upon exhaustion of underlying limits of insurance.

14. So that Great American receives timely notice of claims that may give rise to a "loss" under the Great American Policy, and to ensure that Great American can exercise its rights with respect to defense and investigation of any suit, the Great American Policy contains notice and reporting conditions. Specifically, Condition E. "Notice of Occurrence" provides as follows:

> **1.** You must see to it that we are notified as soon as practicable of an occurrence which may result in a "loss" covered under this policy. To the extent possible, notice will include:
>
> > **a.** how, when and where the occurrence took place;
> >
> > **b.** the names and addresses of any injured persons and witnesses;

     **c.**     the nature and location of any injury or damage arising out of the occurrence.

    **2.**    If a claim or suit against any Insured is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

    **3.**    You and any other involved Insured must:

     **a.**     immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

15.    Peterson-Chase's compliance with the conditions set forth in the Great American Policy, including the requirement that it provide notice of an occurrence "as soon as practicable" is a precondition to coverage under the policy.

### B.    *The Underlying Action*

16.    On or about June 21, 2023, Farshad Malekmehr, M.D. and Sadaf Malekmehr filed a lawsuit in the Superior Court of the State of California for the Country of Los Angeles, captioned *Farshad Malekmehr, M.D., et al. v. Peterson-Chase General Engineering Construction, Inc., et al.*, Case No. 23SMCV02871 (the "Underlying Action").

17.    The Underlying Action asserted claims against Peterson-Chase and one of its employees in connection with an automobile accident that occurred on August 2, 2022.  The accident involved Dr. Malekmehr and a Peterson-Chase employee who was alleged to have been operating a Peterson-Chase vehicle within the scope of his employment at the time of the accident.

18.    The complaint in the Underlying Action alleged causes of action for negligence and loss of consortium, and sought to recover general damages, hospital, medical, professional, and incidental expenses, loss of earnings and loss of earning capacity.

19.    Peterson-Chase had actual knowledge of the accident on or about August 2, 2022, when it occurred.

COMPLAINT

20.   On information and belief, Peterson-Chase reported the accident to its insurance broker on or about August 4, 2022, and a notice of claim was submitted to Starr and Homesite on or about that same date.

21.   On information and belief, Starr defended Peterson-Chase against the Underlying Action under its primary auto liability policy.

22.   Despite notice being provided to Starr and Homesite, no notice was provided to Great American in August 2022.  To the contrary, Peterson-Chase, Starr, and Homesite failed to give notice to Great American of the automobile incident or the Underlying Action until more than three years later, on November 25, 2025.

23.   On November 25, 2025, the Tuesday before the Thanksgiving holiday, Great American received an email from Peterson-Chase's insurance broker that included a notice of claim with respect to the Underlying Action.  Prior to receiving that email, Great American had no knowledge of the Underlying Action that had been pending for over two years, or the automobile accident that had occurred more than three years prior.

24.   On information and belief, at the same time notice of the Underlying Action was first provided to Great American on November 25, 2025, notice was also first provided to another excess insurer, Certain Underwriters at Lloyd's, London ("Underwriters").  Underwriters had issued an excess policy with limits of $5,000,000 in excess of the $17,000,000 in limits of the underlying Starr, Homesite, and Great American Policies.

25.   At the time the claim was finally reported to Great American, trial in the Underlying Action was scheduled to commence a mere six days later, on December 1, 2025.

26.   On December 3, 2025, Great American issued a letter to Peterson-Chase regarding the Underlying Action.  The letter explained that Great American

COMPLAINT

had only received notice of the claim the prior week, and reserved all rights, including the right to deny coverage based on late notice.

27.    At the time Great American received belated notice, Peterson-Chase had already negotiated a stipulation *conceding liability* with respect to the automobile accident that gave rise to the lawsuit.

28.    Indeed, on November 26, 2025, Peterson-Chase and plaintiffs in the Underlying Action filed a Joint Stipulation Regarding Liability pursuant to which Peterson-Chase admitted it was "liable for the Subject Collision due to the negligence of its employee[]" and that "no fault is attributed to Plaintiff Dr. Farshad Malekmehr in the Subject Collision." Peterson-Chase thus admitted its own fault for the accident and abandoned any potential comparative or contributory negligence defense regarding Dr. Malekmehr's relative fault.

29.    Peterson-Chase, Starr, and Homesite were aware far before November 25, 2025 that plaintiffs in the Underlying Action were seeking damages from Peterson-Chase well in excess of the $7,000,000 in limits of the Starr and Homesite policies underlying the Great American Policy. Plaintiff Dr. Malekmehr was a vascular surgeon who earned several million dollars per year. Dr. Malekmehr alleged that because of injuries resulting from the accident with the Peterson-Chase employee, he would be forced to retire approximately a decade earlier than he otherwise would. Accordingly, the bulk of the damages in the Underlying Action arose out of alleged future lost earnings.

30.    During discovery in the Underlying Action, plaintiffs designated an economic expert they intended to present at trial in support of their calculation of lost earnings damages. Peterson-Chase, meanwhile, decided not to present an economic expert at trial. All discovery in the Underlying Action was concluded well before Great American received notice.

6

COMPLAINT

31.    At the time Great American first received notice of the Underlying Action, the court in that case had already conducted all pre-trial proceedings, including issuing rulings on motions in limine.  These rulings included a denial of a motion Peterson-Chase filed challenging plaintiffs' future lost earnings claims as overly speculative.

32.    Because Peterson-Chase conceded liability prior to trial, the issue of damages was the only remaining issue for the jury to determine.

33.    The parties in the Underlying Action attended their final pre-trial status conference on November 21, 2025.  Great American received its first notice regarding the Underlying Action the following week.

### C.    Settlement of the Underlying Action

34.    Shortly after it learned of the Underlying Action for the first time on November 25, 2025, Great American also learned that the parties in the Underlying Action had conducted mediation in early June 2025.  Starr and Homesite were aware of and participated in that mediation.  Great American was unaware of the mediation and had no opportunity to participate in any manner.

35.    At the mediation, plaintiffs in the Underlying Action made a demand on Peterson-Chase that was substantially more than the underlying limits of the Starr and Homesite policies.  Despite this demand that would have implicated the limits of the Great American Policy, no notice was provided to Great American at that time.

36.    Following mediation, plaintiffs made a substantially lower demand that would have resolved the Underlying Action within the underlying limits of the Starr and Homesite policies.  Peterson-Chase, Starr, and Homesite rejected that demand.

37.    On information and belief, the parties in the Underlying Action attended a court-ordered settlement conference in mid-November 2025.  Peterson-

7

COMPLAINT

Chase, Starr, and Homesite again failed to resolve the Underlying Action within underlying limits, refusing to even consider a mediator's proposal that, on information and belief, would have been well within underlying limits.

38.    On further information and belief, defense counsel in the Underlying Action's assessment of the case indicated that there was a substantial likelihood of a verdict being entered in excess of the Starr and Homesite limits, and that a settlement within those limits was reasonable and possible.

39.    On November 26, 2025, Great American sent correspondence to Starr and Homesite urging them to settle the Underlying Action.  Great American stated its understanding that there was "presently a settlement demand that is within the limits of coverage" afforded by Starr and Homesite, and thus demanded that they "settle this case and protect the insured from the possibility of a verdict in excess of the underlying limits."  Starr and Homesite refused to do so.

40.    In communication with Starr and/or Homesite on or about November 26, 2025, Great American also learned of some alleged erosion of the limits of the Starr policy as result of a prior payment of $71,874.  Great American subsequently communicated to Starr and Homesite that it was willing to contribute an amount equal to the alleged erosion so that the full amount of $7,000,000 in limits of the Starr and Homesite policies could be offered to plaintiffs in the Underlying Action to resolve the case.  While Starr eventually agreed to this approach, Homesite rejected it and refused to extend a "firm money" offer to resolve the case.

41.    Trial in the Underlying Action commenced on December 1, 2025. While trial was ongoing, including but not limited to on December 6, 2025, Great American reiterated its willingness to contribute an amount equal to the alleged erosion and made repeated requests for Starr and Homesite to make their limits available to resolve the case and accept plaintiffs' earlier demand to settle within the Starr and Homesite limits.  Homesite still refused to make an offer.

COMPLAINT

42. On December 9, 2025, Underwriters wrote to Starr, Homesite, and Great American and demanded the case be settled within the underlying limits of the Starr, Homesite, and Great American policies.

43. Throughout the trial in the Underlying Action, Great American attempted to work with Starr and Homesite to resolve the Underlying Action, including by extending authority within the limits of the Great American Policy. At the time it did so, Great American expressly reserved all rights to seek reimbursement from Peterson-Chase, Starr, and/or Homesite for any amounts paid for which coverage was not owed, including due to late notice.

44. On December 9, 2025, while the jury was already deliberating, the parties in the Underlying Action agreed to a settlement that would resolve the case within the limits of the Starr, Homesite, and Great American policies. Great American acted reasonably in agreeing to that settlement in order to protect against the risk of a verdict in excess of the limits of the Great American Policy.

45. The jury in the Underlying Action subsequently returned a verdict in plaintiffs' favor for $17,321,897, an amount in excess of the Starr, Homesite, and Great American limits.

46. Prior to the time Great American first received notice of the claim on November 25, 2025, Starr and Homesite had multiple opportunities to resolve the Underlying Action within the limits underlying the Great American Policy. Plaintiffs' demands within underlying limits were reasonable and supported by substantial evidence at the time they were made. Moreover, there remained a substantial likelihood of a verdict being entered at trial that would exceed those underlying limits.

47. Great American was prejudiced by the extremely late reporting of the claim and Underlying Action. Great American was unable to participate in any of the pre-trial settlement negotiations, or to evaluate the issues in the case. Had Great

COMPLAINT

American had a timely opportunity to do so, it would have demanded Starr and Homesite resolve the case within their underlying limits.

48.    The late notice to Great American also resulted in Great American being unable to participate in the defense in the Underlying Action, including participating in defense strategy and issues impacting potential liability.  Great American was also deprived of the opportunity to exercise its contractual right to associate in counsel to assist with the defense of the Underlying Action.  Indeed, at the time Great American received notice on the eve of trial, Peterson-Chase had already conceded liability, withdrawn its economic damages expert, and made important and impactful decisions regarding legal issues, defense theories, evidence, and witnesses to be presented at trial.

49.    As a result of the settlement reached in the Underlying Action, Great American has paid an amount in excess of $75,000 pursuant to its reservation of rights.

50.    On information and belief, Peterson-Chase, Starr, and Homesite dispute Great American's reservation of rights with respect to the Settlement Payment, including its reservation with respect to late notice.

51.    The Great American Policy does not provide any coverage for the Underlying Action, by its terms and as a matter of law and public policy.

52.    An actual controversy between the parties exists and is ripe for resolution, and Great American accordingly seeks a declaration of its rights and duties under the Great American Policy with respect to the Underlying Action.

53.    Great American is further entitled to restitution and reimbursement from Peterson-Chase for the amount it contributed to the settlement of the Underlying Action.

COMPLAINT

54.    In the alternative, Great American is entitled to restitution and reimbursement from Starr and Homesite for the amount it contributed to the settlement in excess of the Starr and Homesite limits.

## COUNT I: DECLARATORY JUDGMENT

### (Late Notice)

55.    Great American reasserts and incorporates Paragraphs 1 through 52 as if fully set forth herein.

56.    An actual, present, and justiciable controversy has arisen concerning Great American's and Peterson-Chase's rights, duties, and obligations under the Great American Policy with respect to the Underlying Action.

57.    The Great American Policy requires Peterson-Chase to "see to it that [Great American is] notified as soon as practicable of an occurrence which may result in a 'loss' covered under this policy." Peterson-Chase is further required to "immediately send [Great American] copies of any demands, notices, summonses or legal papers received in connection with the claim or suit."

58.    The automobile accident at issue occurred on August 2, 2022, and plaintiffs in the Underlying Action filed suit on June 21, 2023. Despite this, Peterson-Chase failed to provide any notice to Great American regarding the automobile accident or the Underlying Action until November 25, 2025, the Tuesday before the Thanksgiving holiday. At the time that notice was finally belatedly provided, a jury trial was scheduled to begin less than one-week later, on December 1, 2025.

59.    Because Great American was not notified of the claim or Underlying Action until the eve of trial, Great American was unable to exercise its right under the Great American Policy to participate "in the investigation of any claim or defense of any suit which in our opinion may create liability on us for 'loss' under this policy."

COMPLAINT

60.   To make matters worse, at the time Great American was finally notified of the Underlying Action, Peterson-Chase had already **stipulated to liability** in the Underlying Action and pre-trial motions had been filed and ruled on, further stripping Great American of any ability to potentially contribute to or weigh-in on defense strategy.

61.   Moreover, Great American was further prejudiced in that it was unaware of, and thus unable to participate in, any of the prior settlement negotiations in the Underlying Action, including the June 2025 mediation and November 2025 settlement conference.

62.   As a result of Peterson-Chase's breach of the notice provisions of the Great American Policy, and as a matter of law and public policy, there is no coverage in connection with the Underlying Action.

63.   Accordingly, Great American is entitled to a declaration that there is no coverage under the Great American Policy for the Underlying Action.

## COUNT II: REIMBURSEMENT

### (Against Peterson-Chase)

64.   Great American reasserts and incorporates Paragraphs 1 through 61 as if fully set forth herein.

65.   As set forth in *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489 (2001), an insurer may bring a claim for reimbursement against an insured which has received the benefit of a payment made to settle an uncovered claim.  Such claims are based on principles of unjust enrichment.

66.   As a result of the late notice to Great American of the claim and Underlying Action, there is no coverage for the Underlying Action under the Great American Policy.  Accordingly, Great American had and has no duty to indemnify Peterson-Chase in the Underlying Action.

COMPLAINT

67. Great American, under a reservation of rights, including the right to assert late notice and the right to seek reimbursement, extended a benefit to Peterson-Chase by agreeing to contribute to the settlement of the Underlying Action.

68. Indeed, Great American had little choice but to accept the settlement presented, in order to resolve the Underlying Action within the limits of the Starr, Homesite, and Great American policies, and avoid exposure in excess of those limits.

69. Peterson-Chase has retained a benefit from Great American's settlement payment. Because Peterson-Chase was not entitled to that benefit under the Great American Policy, Peterson-Chase has been unjustly enriched and Great American has been damaged.

70. Great American is therefore entitled to an award of full restitution and reimbursement from Peterson-Chase for the amounts it paid to settle the Underlying Action.

## COUNT III: EQUITABLE SUBROGATION

### (Against Starr and Homesite)

71. Great American reasserts and incorporates Paragraphs 1 through 68 as if fully set forth herein.

72. An actual, present, and justiciable case or controversy exists between Great American, Starr, and Homesite regarding Starr's and Homesite's conduct in the settlement negotiations and settlement of the Underlying Action.

73. Starr and Homesite received a reasonable settlement demand by Plaintiffs in the Underlying Action and had reasonable opportunities to settle within their policy limits. The demand was reasonable, supported by evidence, and there was a substantial likelihood that a jury verdict would exceed the limits of the Starr and Homesite policies.

COMPLAINT

74.    Starr and Homesite

75.    Starr and Homesite owed Great American and Peterson-Chase a duty to effect a reasonable settlement of the Underlying Action within the underlying limits of the Starr and Homesite policies.

76.    Starr and Homesite acted unreasonably in refusing to settle the Underlying Action within policy limits.  This failure resulted in Great American suffering a substantial loss in excess of the underlying limits.  Great American would not have suffered such loss or incurred such damages if Starr and Homesite had settled within their limits.

77.    Great American's contribution to the settlement of the Underlying Action was reasonable under the circumstances, and necessary to protect the rights of the insurers' mutual insured and additional excess insurers, including Underwriters.  Great American agreed to contribute to the settlement not as a volunteer and subject to its right to seek reimbursement and recoupment of amounts paid.

78.    Pursuant to the doctrine of equitable subrogation, Great American is entitled to reimbursement from Starr and/or Homesite for all monies Great American paid in connection with the Underlying Action.

**COUNT IV: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

**(Against Starr and Homesite)**

79.    Great American reasserts and incorporates Paragraphs 1 through 75 as if fully set forth herein.

80.    Starr and Homesite had a duty to settle the Underlying Action within their policy limits because there was a substantial likelihood that a verdict would exceed those limits.

COMPLAINT

81.    Pursuant to the demands plaintiffs in the Underlying Action made in June 2025, Plaintiffs were targeting a settlement within the Starr and Homesite layers of insurance.

82.    Starr and Homesite unreasonably refused to settle the Underlying Action, which created an unreasonable risk of a judgment in excess of the Starr and Homesite limits.  This unreasonable refusal to settle constituted a breach of Starr's and Homesite's duty of good faith and fair dealing.

83.    At trial, the jury returned a verdict of $17,321,897, well in excess of the Starr and Homesite limits, and well in excess of the amount plaintiffs in the Underlying Action had previously demanded.

84.    Great American agreed to contribute an amount to settle the Underlying Action pursuant to an agreement entered into during the pendency of the jury trial, subject to Great American's right to recoup from Starr and Homesite the amount it paid.

85.    On information and belief, Peterson-Chase has not released any rights against Starr or Homesite.

86.    As a result of Starr's and Homesite's breach of duty, Great American has suffered damages.

87.    Starr and Homesite are obligated to reimburse Great American for the amount it contributed to settle the Underlying Action.

## **PRAYER FOR RELIEF**

WHEREFORE, Great American respectfully requests that the Court:

A.    Declare that Great American has and had no coverage obligations for the Underlying Action under the Great American Policy;

B.    Declare that, because the Great American Policy does not afford coverage for the Underlying Action, Great American had no duty to indemnify Peterson-Chase in the Underlying Action;

COMPLAINT

C. Declare that, in the absence of a duty to indemnify, Great American is entitled to reimbursement of all amounts paid on behalf of Peterson-Chase to settle the Underlying Action;

D. Award Great American full restitution and reimbursement of all amounts paid on behalf of Peterson-Chase to settle the Underlying Action;

E. In the alternative, pursuant to Counts III and IV, award Great American damages in the amount it paid on behalf of Peterson-Chase to settle the Underlying Action;

F. Award Great American pre-judgment and post-judgment interest, and its fees and costs for this litigation; and

G. Grant Great American any further appropriate relief as the Court determines to be warranted.

May 8, 2026                                 Respectfully submitted,

/s/ Matthew J. Antonelli
Matthew J. Antonelli (Bar No. 343144)
RUGGERI PARKS WEINBERG LLP
315 Montgomery Street, Suite 900
San Francisco, CA 94104
Tel:   (415) 429-0998
Fax:   (202) 984-1401
mantonelli@ruggerilaw.com

*Counsel for Plaintiff Great American Insurance Company*

16
COMPLAINT